**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DEBRA A. GARCIA,

                                  Plaintiff,

    v.                                           No. 05-CV-1526
                                                          (DRH)
COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.

---

**APPEARANCES:**                       **OF COUNSEL:**

STEPHEN J. MASTAITIS, JR., ESQ.
Attorney for Plaintiff
1412 Route 9P
Saratoga Springs, New York 12866

HON. GLENN T. SUDDABY              WILLIAM H. PEASE, ESQ.
United States Attorney for the          Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

      Plaintiff Debra A. Garcia ("Garcia") brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for benefits under the Social Security Act. Garcia moves for a finding of disability and the Commissioner cross-moves for a judgment on the pleadings. Docket Nos. 8, 11. For the reasons which follow, the Commissioner's decision is affirmed.

## I. Procedural History

On September 10, 2003, Garcia filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 53-55.[1]  On November 20, 2003, the application was denied.  T. 38-41.  Garcia requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ James S. Quinlivan on October 4, 2004.  T. 15, 42.  In a decision dated November 26, 2004, the ALJ held that Garcia was not entitled to disability benefits.  T. 21-23.  On December 11, 2004, Garcia filed a request for review with the Appeals Council.  T. 9-11.  The Appeals Council denied Garcia's request for review, thus making the ALJ's findings the final decision of the Commissioner.  T. 4-6.  This action followed.

## II. Contentions

Garcia contends that the ALJ erred when he failed to consider fully her non-exertional diagnoses, determine properly her residual functional capacity, and give appropriate weight to her testimony.  Garcia also contends that the ALJ's findings as to which jobs she could perform in the national economy were not supported by substantial evidence.  The Commissioner contends that there was substantial evidence to support the determination that Garcia was not disabled.

---

[1] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Docket No. 5.

### III. Facts

Garcia is currently fifty-three years old and has a high school education. T. 53, 329. Garcia previously worked as a Certified Nurse's Assistant. T. 16, 71, 329. Garcia alleges that she became disabled on September 20, 2002 due to allergies, asthma attacks, and reactive airway disease. T. 16.

### IV. Standard of Review

### A. Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2003). In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (2003).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an

> impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2003).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform. Id.

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw, 221 F.3d at 131 (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y. Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  A court, however, cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive. Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## V.  Discussion

### A. Medical Evidence

Garcia alleges that she became disabled on September 20, 2002 due to allergies, asthma attacks, and reactive airway disease.  T. 16, 53.  Between March 2000 and September 2002, Garcia was treated at Hudson Valley Asthma and Allergy Associates by Drs. John Scinto and Neil Goldman.  T. 153-76.  During his initial examination of Garcia, Dr. Scinto observed that she suffered from acute upper and lower airway inflammation secondary to chemical exposure.  T. 176.  On March 31, 2000, after receiving the results of Garcia's skin allergy tests, Dr. Scinto concluded that her recent respiratory condition was due to chemical solvents and disinfectants.  T. 171.  Dr. Scinto noted that Garcia might return to work without any significant risk as long as she followed adequate respiratory precautions.  Id.  On December 6, 2001, Dr. Goldman examined Garcia and noted that she had been doing extremely well over the past several months and had no significant

respiratory distress or allergic symptomatology. T. 156. Dr. Goldman also noted that Garcia's reactive airway disease was well controlled with medication. T. 153, 156.

From October 2002 until August 2004, Garcia was treated at the Division of Pulmonary and Critical Care Medicine of Albany Medical College ("Albany Medical"). T. 195-217, 236-37, 311-24. Throughout her treatment, Garcia's doctors reported that she was asymptomatic and had clear lungs with no wheezes or crackles. T.195, 199, 202, 210, 323. Garcia's physicians described her condition as mild asthma and reactive airway disease. T. 313, 321, 323. On November 11, 2002, a Methacholine challenge test ("MCT") revealed the presence of mild bronchial hyperresponsiveness. T. 201, 208.

On June 26, 2003, Garcia was evaluated by Dr. Lynne Portnoy. T. 247-49. Dr. Portnoy noted that Garcia did not appear to be in any apparent distress and her lungs were clear. T. 248. Shortly thereafter, Garcia was consultatively examined by Dr. Mario Brezler, who had similar findings as Dr. Portnoy. T. 266-68. Dr. Brezler also noted that Garcia's limitations were mild in regard to any type of exposure to dust, fumes, smoke, or strong odors. T. 269. On July 23, 2003, Garcia was evaluated by Dr. Harold M. Sokol. T. 215-17. Dr. Sokol believed that Garcia had reactive airways dysfunction syndrome and was partially disabled to a mild extent. T. 217. However, Dr. Sokol also believed that Garcia's symptoms would wane over time. Id.

### B. Subjective Complaints

Garcia contends that the ALJ did not adequately explain his decision to disregard her testimony concerning her impairments.

The basis for establishing disability includes subjective complaints of pain, even where the pain is unsupported by clinical or medical findings, provided that the underlying impairment can be "medically ascertained." 20 C.F.R. § 404.1529 (2003). A finding that a claimant suffers from disabling pain requires medical evidence of a condition that could reasonably produce pain. An ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be expected to be consistent with the medical and other evidence. 20 C.F.R. § 404.1529 (2003); Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Pain is a subjective concept "difficult to prove, yet equally difficult to disprove" and courts should be reluctant to constrain the Commissioner's ability to evaluate pain. Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). If there is a rejection of the claims of disabling pain, the ALJ must provide specific reasons for doing so. Saviano v. Chater, 956 F. Supp. 1061, 1071 (E.D.N.Y. 1997).

The claimant's credibility and motivation, as well as the medical evidence of impairment, are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment. See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1978); Lewis v. Apfel, 62 F. Supp. 2d 648, 653 (N.D.N.Y. 1999). If there is conflicting evidence about a claimant's pain where the degree of pain complained of is not consistent with the impairment, the ALJ must make credibility findings. Donato v. Sec'y of HHS, 721 F.2d 414, 418-19 (2d Cir. 1983). The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

    (I) [The claimant's] daily activities;

    (ii) The location, duration, frequency, and intensity of [the

7

> claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2003).

Here, the ALJ concluded that Garcia's "allegations of asthma/allergy problems are deemed excessive, not fully credible and are treated accordingly." T. 19, 21. In support of his conclusion, the ALJ cited the examinations and diagnostic studies of Garcia's treating and consultative physicians which failed to substantiate her subjective complaints. T. 19. The ALJ noted that all pulmonary function studies and chest x-rays in the record were within normal limits. T. 19, 153, 156, 171, 176, 195-96, 199, 201-02, 268, 311-12. The ALJ also noted that Garcia reported she was able to control her asthma attacks by leaving the environment that was aggravating her symptoms and through medication. T. 19, 153, 266-67, 311. Further, Garcia's MCT test in 2002 revealed only a mild bronchial hyperresponsiveness. T. 201, 208. Thus, there was substantial evidence to support the ALJ's conclusion that Garcia's subjective complaints were not fully credible.

Therefore, the Commissioner's determination on this ground is affirmed.

8

**C. Residual Functional Capacity**

Garcia contends that substantial evidence does not support the ALJ's findings regarding her residual functional capacity ("RFC") and ability to perform other work in the national economy. Garcia also contends that the ALJ failed to consider fully her non-exertional diagnoses and limitations when evaluating her RFC.

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms. Martone, 70 F. Supp. 2d at 150; see also 20 C.F.R. §§ 404.1545, 416.945 (2003). "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations." Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted). In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities. Martone, 70 F. Supp. 2d at 150. RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see also 20 C.F.R. § § 404.1545, 416.960 (2003).

Here, the ALJ concluded that Garcia's impairments did not prevent her from performing her past relevant work. T. 19-20. The ALJ found that Garcia had the RFC to

> lift/carry 20 pounds occasionally and 10 pounds frequently; stand/be on feet at least four to six hours total, one hour without interruption; sit at least five to six hours total, one hour without interruption; no climbing hills/slopes or work on uneven terrain (shortness of breath); no climbing high ladders or working at unprotected heights (safety); only occasionally climb stairs/steps/ramps, bend/stoop, balance, crouch/squat, kneel or crawl (obesity); no exposure to

> excessive air pollutants, pulmonary irritants or allergens, principally no chemicals, disinfectants, solvents, or latex; be permitted to wear corrective eye glasses as desired; and only work in well ventilated areas. Moreover, she is capable of understanding, remembering and carrying out simple and limited detailed instructions/tasks in a low stress/unpressured work setting without significant interaction to the general public (allergic to excessive perfume and cologne exposure per self report).

T. 19. Garcia contends that the workplace accommodations she requires – i.e., avoiding latex and disinfectants and unscheduled absences from her workstation – were not generally available in her occupation.[2] However, as discussed supra, the ALJ determined that Garcia's allegations of asthma/allergy problems were excessive and not supported by the medical evidence. Although the ALJ failed to credit fully Garcia's subjective complaints regarding exposure to certain odors and chemicals in the workplace, he still found that she should not be exposed to excessive amounts of air pollutants, allergens, and chemicals. T. 19. He also determined that she must work in "well-ventilated areas." Id.

These conclusions were supported by the testimony of various physicians who treated Garcia and determined that she was able to work as long as she avoided exposure to strong odors and chemicals. T. 19-20. For example, Dr. Sokol concluded that Garcia was employable as long as she was not exposed to strong odors or other respiratory irritants and that her symptoms would wane over time. T. 217. Further, Dr. Sokol noted during his July 15, 2003 examination that Garcia was not in respiratory distress despite his

---

[2] Garcia also contends that because of her excellent work record, her testimony should have been entitled to great weight. However, "work history is just one of the many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony." Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998). Thus, Garcia's work history is not controlling on the ALJ's determination of how much weight should be afforded to her testimony.

wearing cologne.  T. 216.  Thus, there was substantial evidence to support the ALJ's conclusion that Garcia retained the RFC to perform her past relevant work.

As to Garcia's contention that the ALJ failed to evaluate her non-exertional limitations properly, this claim is without merit.  The ALJ noted that the medical evidence indicated that Garcia suffered from obesity, asthma/allergies, depression, and near-sightedness.  T. 16-17.  The ALJ concluded that Garcia's asthma/allergies and near-sightedness were severe, while her depression was less than severe.  T. 17.  However, although Garcia's asthma/allergies and near-sightedness were severe within the meaning of the Regulations, the ALJ determined that these impairments were "not severe enough to meet or medically equal one of the impairments listed in the Appendix 1, Subpart P, Regulations No. 4."  T. 16-18.  Thus, the ALJ properly evaluated her alleged non-exertional limitations.

Finally, although the ALJ determined at step four that Garcia could perform her past relevant work, he proceeded to the fifth step to determine whether there were other jobs in the national economy that she could perform.  T. 20-21.[3]  The ALJ relied on the testimony of the vocational expert to support his conclusion that there were a significant number of jobs in the national economy which Garcia could perform.  Id.  Garcia again argues that her alleged sensitivity to certain odors and chemicals would prevent her from performing these jobs.  However, the ALJ addressed this concern in his decision, citing the testimony of the vocational expert that Garcia's "exposure to chemicals would limit her occupation but these

---

[3] The ALJ stated that "[e]ven if it had not been established that [Garcia] could return to her past work . . . , there are other jobs existing in significant numbers in the national economy that [Garcia] can perform, consistent with [her] residual functional capacity, age, education, and work experience."  T. 20.

limits would not affect her employment." T. 21. Further, the ALJ cited Garcia's testimony that her current employer was assisting her in keeping her work environment free of chemicals that could irritate her alleged impairments. Thus, there was substantial evidence to support the ALJ's conclusion that Garcia retains the capacity for work that exists in significant numbers in the national economy.

Therefore, the Commissioner's determination on this ground is affirmed.

### VI. Conclusion

For the reasons stated above, it is hereby

**ORDERED** that the decision denying disability insurance benefits be **AFFIRMED**, Garcia's motion for a finding of disability (Docket No. 8) be **DENIED**, and the Commissioner's cross-motion (Docket No. 11) be **GRANTED**.

DATED: March 27, 2007
　　　　Albany, New York

_David R. Homer_
United States Magistrate Judge